**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

**STEVEN A. LERMAN & ASSOCIATES, INC.**
Steven A. Lerman, Esq. (S.B.N. 55839)
slermanlaw@yahoo.com
Nicholas M. Lerman, Esq. (SBN: 292656)
nlerman@lermanslaw.com
6033 West Century Boulevard, Suite 740
Los Angeles, California 90045
Telephone: (310) 659-8166

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA SOSA, L.S. by and through guardian *ad litem* MARIA SOSA, M.S. by and through guardian *ad litem* JENNIFER LOPEZ, individually and as successors-in-interest to Maximiliano Sosa,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF FRESNO and DOES 1–5,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br><u>Federal Law Claims</u><br>1. Fourth Amendment, Excessive Force<br>2. Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)<br>3. Fourteenth Amendment, Interference with Familial Relationship (42 U.S.C. § 1983)<br>4. Municipal Liability, Unconstitutional Custom or Policy (42 U.S.C. § 1983)<br>5. Municipal Liability, Failure to Train (42 U.S.C. § 1983)<br>6. Municipal Liability, Ratification (42 U.S.C. § 1983)<br>7. Americans with Disabilities Act (42 U.S.C. § 12132)<br><br><u>State Law Claims</u><br>8. Battery<br>9. Negligence<br>10. Negligent Infliction of Emotional Distress<br>11. Violation of Cal. Civil Code § 52.<br><br>**DEMAND FOR JURY TRIAL** |

1

## COMPLAINT FOR DAMAGES

COME NOW, Plaintiffs MARIA SOSA, L.S., and M.S. by and through their guardian *ad litem*, JENNIFER LOPEZ, for their Complaint for Damages against Defendants CITY OF FRESNO and DOES 1–5 ("DEFENDANT OFFICERS") and hereby allege as follows:

## INTRODUCTION

1.      This civil rights and state tort action arises from the unjustified use of deadly force by Fresno Police Department officers against Maximiliano Sosa, a 33-year-old diesel mechanic and father of two. On the night of November 4, 2023, the officers recklessly escalated a manageable situation into a deadly confrontation, resulting in a life cut short, two young children robbed of their father's love and guidance, and a widow permanently scarred by the loss of her partner. Plaintiffs seek compensatory damages from Defendants for violating their rights under the United States Constitution and for their violations of state law. Plaintiffs seek punitive damages from the officers.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3)–(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

3.      This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. §1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Venue in this judicial district is proper pursuant to 28 U.S.C.

§1391(b) because all incidents, events, and occurrences giving rise to this action occurred within this district.

5.      On February 12, 2024, Plaintiffs served their comprehensive and timely claim for damages on their own behalf and on behalf of Mr. Sosa with the CITY OF FRESNO pursuant to applicable sections of the California Government Code.

6.      On March 8, 2024, Plaintiffs served their amended claim for damages on their own behalf and on behalf of Mr. Sosa with the CITY OF FRESNO pursuant to applicable sections of the California Government Code

7.      On March 19, 2024, Defendant CITY OF FRESNO served its letters of rejection of Plaintiffs' claims.

## PARTIES

8.      Maximiliano Sosa, a 33-year-old man, was killed on November 4, 2023 by Defendant CITY OF FRESNO police officers. At all relevant times, Mr. Sosa was an individual residing in Fresno.

9.      Plaintiff MARIA SOSA is an individual who was residing in Fresno at the time of the incident. MARIA SOSA is the wife of Mr. Sosa; she sues under federal and state law in her individual capacity and as successor-in-interest to Mr. Sosa. Plaintiff MARIA SOSA is Mr. Sosa's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60.

10.      Plaintiff L.S., a child of Mr. Sosa, is an individual and was residing in Fresno at the time of the incident. Plaintiff L.S. sues under federal and state law in his individual capacity and as successor-in-interest to Mr. Sosa. Plaintiff L.S. is Mr. Sosa's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60.

11.      Plaintiff M.S., a child of Mr. Sosa, is an individual and was residing in Fresno at the time of the incident. Plaintiff M.S. sues under federal and state law in her individual capacity and as successor-in-interest to

Mr. Sosa. Plaintiff M.S. is Mr. Sosa's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60.

12.     Defendant CITY OF FRESNO ("CITY") is a political subdivision of the State of California that is within this judicial district. Defendant CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Fresno Police Department ("FPD") and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring those actions, omissions, policies, procedures, practices, and customs of the Defendant CITY, FPD, and its employees and agents complied with the laws of the United States and the State of California.

13.     DOES 1–5, ("DEFENDANT OFFICERS") are police officers with the FPD. At all relevant times, DEFENDANT OFFICERS were acting under the color of law within the course and scope of their duties as officers working for the FPD. At all relevant times, DEFENDANT OFFICERS acted with complete authority and ratification of their principal, Defendant CITY.

14.     Plaintiffs are ignorant of the true names and capacities of DEFENDANT OFFICERS and therefore sue them by such fictitious names. Plaintiffs will amend the complaint to allege the true names and capacities of those Defendants when their names have been ascertained. Plaintiffs are informed and believe, and on that basis allege, that DEFENDANT OFFICERS are responsible in some manner for the occurrences alleged herein and proximately caused Plaintiffs' damages.

15.     According to information and belief, DEFENDANT OFFICERS were at all relevant times residents of Fresno.

16.     Defendants acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants, or representatives of each other and, in doing the activities alleged herein, acted within the scope of their

4

authority as agents and employees, and with the permission and consent of each other.

17.     Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein all individual Defendants, including DEFENDANT OFFICERS, acted under the color of law, statute, ordinance, regulations, customs and usages of the State of California and the Defendant CITY.

18.     Pursuant to Cal. Govt. Code §815.2(a), Defendant CITY is vicariously liable for the nonfeasance and malfeasance of the individual DEFENDANT OFFICERS as alleged by Plaintiffs' state law claims. ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."). DEFENDANT OFFICERS are liable for their nonfeasance and malfeasance pursuant to Cal. Civ. Code §820(a). Defendant CITY is also liable pursuant to Cal. Govt. Code §815.6.

19.     DEFENDANT OFFICERS are sued individually. Defendant CITY is being sued for direct liability under *Monell* and vicarious liability under Plaintiffs' state law claims.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

20.     During the early hours of November 4, 2023, officers from the City of Fresno ("CITY") Police Department ("FPD") responded to the residence of MARIA SOSA.

21.     Upon arrival, Defendant Officers spoke with MARIA SOSA, where she informed them that Mr. Sosa was having a mental health crisis.

22.     Mr. Sosa was 33 years old at the time.

23.     Defendant Officers entered the residence and asked MARIA SOSA to call Mr. Sosa to return to the residence, which she did.

24.     When Mr. Sosa arrived at the residence, two Defendant Officers, DOE 1 and DOE 2, aimed lethal weapons at Mr. Sosa.

25.     Despite knowing that Mr. Sosa was suffering from a mental health crisis, DOE 1 and DOE 2 escalated the situation by simultaneously shouting conflicting commands at him, contributing to his confusion.

26.     After several minutes talking with the police officers, Mr. Sosa said he wanted the officers to shoot him outside of the residence.

27.     DOE 1 and DOE 2 ordered Mr. Sosa to leave the residence, which unnecessarily escalated the situation, leading to the fatal shooting.

28.     Mr. Sosa complied with their order and walked out of the door of the residence at a slow pace with his hands down to his sides.

29.     Three more FPD Defendant Officers were waiting outside near the door, DOES 3–5.

30.     Shortly after Mr. Sosa exited the residence, while he was still walking at a slow pace with his arms to his sides, Defendant Officer DOE 3 discharged his taser at Mr. Sosa, striking him and causing injury.

31.     When he was tased, Mr. Sosa was several yards away from the nearest person, and he was not actively resisting arrest or attempting to evade arrest by flight, nor was he posing an immediate threat to the safety of the officers or others. The use of the taser under these circumstances was excessive and unreasonable.

32.     The DEFENDANT OFFICERS failed to provide a verbal warning indicating that a taser would be used and did not afford Mr. Sosa an opportunity to heed any such warning.

33.     Seconds after being tased, DEFENDANT OFFICERS discharged their firearms at Mr. Sosa, striking and fatally wounding him.

34.    At the time of the shooting, Mr. Sosa did not pose an immediate threat of death or serious bodily injury to any person.

35.    The DEFENDANT OFFICERS failed to provide a verbal warning indicating that deadly force would be used and did not afford Mr. Sosa an opportunity to heed any such warning.

36.    Following the shooting, the involved officers neglected to promptly summon medical attention for, or provide medical aid to, Mr. Sosa.

37.    As a direct and proximate result of the shooting and the subsequent failure to provide timely medical care, Mr. Sosa experienced severe pain and suffering, loss of life, and loss of earning capacity.

## FIRST CLAIM FOR RELIEF

### Fourth Amendment—Excessive Force (42 U.S.C. § 1983)

#### (Plaintiffs against DEFENDANT OFFICERS)

38.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

39.    Plaintiffs bring this claim for relief in their capacity as the successors in interest of Mr. Sosa under California Code of Civil Procedure § 377.30.

40.    The Fourth Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by law enforcement officers.

41.    DEFENDANT OFFICERS failed to employ de-escalation tactics, gave conflicting and simultaneous commands, and did not provide a verbal warning for the use of deadly force when it was feasible to do so.

42.    DEFENDANT OFFICERS used excessive force against Mr. Sosa by tasing and fatally shooting him, despite the fact that Mr. Sosa was not an

7

immediate threat of death or serious bodily injury. Furthermore, no verbal warning of deadly force was given, nor was Mr. Sosa given an opportunity to heed such a warning. This unjustified and unreasonable use of force violated Mr. Sosa's Fourth Amendment rights.

43.     As a direct result of the Defendants Officers actions, Mr. Sosa experienced severe physical and mental pain up to the time of his death.

44.     DEFENDANT OFFICERS acted within the course and scope of their employment as officers for the FPD and acted under color of state law.

45.     The use of force was excessive and unreasonable, given that Mr. Sosa did not pose an immediate threat of severe bodily injury or death to any person.

46.     The conduct of DEFENDANT OFFICERS was willful, wanton, malicious, and done with reckless disregard for Mr. Sosa's rights and safety, warranting the imposition of exemplary and punitive damages.

47.     No serious or violent crime was being responded to, and less intrusive alternatives were available.

48.     Further, the Defendants knew that Mr. Sosa was suffering from a mental health crisis, but they did not take that into account when they chose to escalate the situation, shout simultaneously, and shoot him without warning.

49.     DEFENDANT OFFICERS are directly liable for Mr. Sosa's injuries, either because they were integral participants in the excessive force and because they failed to intervene to prevent the use of excessive force.

50.     Plaintiffs seek survival damages, including but not limited to pre-death pain and suffering, loss of life, loss of opportunity of life, and loss of enjoyment of life, under this claim. Plaintiffs also seek attorneys' fees and costs under this claim.

COMPLAINT FOR DAMAGES

1

2

3

## SECOND CLAIM FOR RELIEF

### Fourth Amendment—Denial of Medical Care (42 U.S.C. § 1983)

(Plaintiffs against DEFENDANT OFFICERS)

4

5

6

51.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

7

8

9

10

52.     Plaintiffs bring this claim for relief in their capacity as the successors in interest of Mr. Sosa under California Code of Civil Procedure § 377.30. This claim for relief arose in Mr. Sosa's favor, and Mr. Sosa would have been the plaintiff with respect to this cause of action had he lived.

11

12

13

53.     DEFENDANT OFFICERS acted within the course and scope of their employment as officers for the Defendant CITY and FPD and acted under color of state law.

14

15

16

17

18

54.     The denial of medical care by DEFENDANT OFFICERS deprived Mr. Sosa of his right to be secure in his person against unreasonable searches and seizures guaranteed by the Fourth Amendment to the U.S. Constitution, as applied to the states by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

19

20

21

22

55.     DEFENDANT OFFICERS failed to provide timely medical care to Mr. Sosa and failed to timely summon medical care for Mr. Sosa. DEFENDANT OFFICERS's delay and/or denial of medical care was a cause of Mr. Sosa's pain, suffering, and death.

23

24

25

26

56.     As a direct result of the aforesaid acts and omissions of DEFENDANT OFFICERS, Mr. Sosa suffered great physical and mental injury, fear, and emotional distress leading to his death and the loss of enjoyment of life.

27

28

57.    Plaintiffs seek survival damages, including but not limited to pre-death pain and suffering and loss of enjoyment of life, under this claim. Plaintiffs also seek attorneys' fees and costs under this claim.

### THIRD CLAIM FOR RELIEF

**Fourteenth Amendment—Denial of Familial Relationship (42 U.S.C. § 1983)**

(Plaintiffs against DEFENDANT OFFICERS)

58.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

59.    MARIA SOSA had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in MARIA SOSA's familial relationship with her husband, Mr. Sosa.

60.    L.S., by and through guardian ad litem JENNIFER LOPEZ, had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in L.S.'s familial relationship with their father, Mr. Sosa.

61.    M.S., by and through guardian ad litem JENNIFER LOPEZ, had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in M.S.'s familial relationship with their father, Mr. Sosa.

62.     DEFENDANT OFFICERS acted within the course and scope of their employment as officers for the Defendant CITY and FPD and acted under color of state law.

63.     The aforementioned actions of DEFENDANT OFFICERS shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Mr. Sosa and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

64.     As a direct and proximate result of these actions, Mr. Sosa experienced pain and suffering and eventually died. DEFENDANT OFFICERS thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with Mr. Sosa.

65.     As a direct and proximate cause of the acts of DEFENDANT OFFICERS, Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Sosa, and will continue to be so deprived for the remainder of their natural lives.

66.     DEFENDANT OFFICERS are liable for Mr. Sosa's injuries either because they were integral participants in the excessive force and because they failed to intervene to prevent the excessive force.

67.     Plaintiffs bring this claim individually and as successors-in-interest to Mr. Sosa and seek both survival and wrongful death damages for the violation of their rights. Plaintiffs also seek attorney's fees and costs under this claim.

68.     The conduct of DEFENDANT OFFICERS was malicious, wanton, oppressive, and carried out with conscious disregard for the rights of both the Plaintiffs and Mr. Sosa. DEFENDANT OFFICERS intentionally deprived and violated their constitutional rights, or acted with reckless

disregard for those rights. As such, this conduct entitles the Plaintiffs to an award of exemplary and punitive damages from DEFENDANT OFFICERS.

## **FOURTH CLAIM FOR RELIEF**

**Municipal Liability: Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(Plaintiffs against the CITY)

69.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

70.    The actions of DEFENDANT OFFICERS, which deprived Mr. Sosa and Plaintiffs of their constitutional rights under the Fourth and Fourteenth Amendments, were carried out in accordance with a widespread and longstanding practice or custom of Defendant CITY. This custom condones, ratifies, and acquiesces in the excessive use of deadly force by FPD officers. Due to this ingrained practice, DEFENDANT OFFICERS have not been disciplined, reprimanded, retrained, suspended, or faced any administrative or adverse employment consequences in connection with Mr. Sosa's death. This practice or custom by CITY serves as the moving force behind the deprivation of the Plaintiffs' rights and Mr. Sosa's death.

71.    Defendants CITY, together with other CITY final policymakers and supervisors, maintained the following unconstitutional customs, practices, and policies:

     a. The use of excessive force, including excessive deadly force by FPD officers when there is no need for deadly force, or where there is no imminent threat to officers.

     b. The CITY's failure to provide adequate training regarding the use of force, and the use of deadly force.

     c. The CITY's employing and retaining as police officers any individuals whom the CITY knew or reasonably should have

known had dangerous propensities for abusing their authority and for using excessive deadly force.

d. The use of excessive force by FPD officers against individuals suffering from a mental health crisis, when there are reasonable alternatives.

e. The CITY's inadequately supervising, training, controlling, assigning, and disciplining Police Officers, contributing to situations like that encountered on November 4, 2023, where lack of proper direction and control led to the escalation of a situation involving a mentally distressed individual and resulted in fatal consequences.

f. The CITY's maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by CITY police officers, as demonstrated by the incident on November 4, 2023, where conflicting orders and the use of lethal force against an individual suffering from a mental health crisis highlight systemic failures in handling such situations.

g. The CITY's custom and practice of concluding that acts of excessive use of force are "within policy" including use of deadly force instances such as the one on November 4, 2023, where lethal force was used against an individual in a mental health crisis who did not pose an immediate threat of death or serious bodily injury to any person.

h. Even when an incident such as the one on November 4, 2023, is brought to light, where the use of force was excessive and fatal against a mentally distressed individual, the CITY has refused to discipline, terminate, or retrain the officers involved.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     i.   The CITY's custom and practice of accommodating, or facilitating a "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes, as potentially indicated by the lack of immediate corrective actions or reporting regarding the incident on November 4, 2023.

    j.   The CITY's maintaining a policy of inaction and an attitude of indifference towards soaring numbers of instances of excessive force by police officers, as evidenced by the fatal incident on November 4, 2023, where a lack of discipline, retraining, investigation, termination, and recommendation for criminal prosecution perpetuates a cycle of violence, especially against vulnerable populations.

    k.   The CITY's custom and practice of providing inadequate training regarding handling situations with mentally ill persons and failing to provide adequate training in compliance with Welfare and Institutions Code § 5150 and 5158, as exemplified by the incident on November 4, 2023, where the officers were ill-prepared to de-escalate a situation involving an individual suffering from a mental health crisis, leading to fatal consequences.

72.    Defendants CITY, along with DEFENDANT OFFICERS, together with various other CITY officials, and final policy makers, had either actual or constructive knowledge of the unconstitutional policies, practices and customs alleged in the paragraphs above. The Defendants CITY, along with DEFENDANT OFFICERS, acted with deliberate indifference to the foreseeable effects and consequences of these customs and policies with respect to the constitutional rights of Mr. Sosa, Plaintiffs, and other individuals similarly situated.

COMPLAINT FOR DAMAGES

73.     The following are examples of constitutional violations committed by police officers working for Defendant CITY. These examples demonstrate the CITY's unconstitutional customs and practices of using excessive force against unarmed civilians, ratifying that use of deadly force, and/or finding the use of deadly force to be justified or "within policy," as exemplified in the incident on November 4, 2023, involving Mr. Sosa during a mental health crisis. Despite knowledge of Mr. Sosa's mental health condition and initial use of non-lethal force options, Defendant Officers escalated the situation by discharging their tasers and firearms, fatally wounding Mr. Sosa's, who at that time did not pose an immediate threat of death or serious bodily injury to any person, including the involved officers. This incident reflects the alleged unconstitutional customs and practices within the Defendant CITY.

    a.   In *Estate of Casillas v. City of Fresno, et al.*, No. 1:16-cv-1042-AWI-SAB (E.D. Cal.), a man exited an apartment carrying a metal pipe and walked slowly toward an officer. Without warning, the officer shot him three times, killing him. In February 2019, a jury awarded Casillas' heirs $4,750,000. The CITY settled the case for $4,400,000 in 2021. The officer was not disciplined or retrained for his use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

    b.   In *Willis v. City of Fresno, et al.*, No. 1:09-cv-01766-BAM (E.D. Cal.), the family of a man who was shot by two FPD officers was awarded $1,302,044.80 following a jury trial. The decedent was in the parking lot of his apartment complex at the time of the shooting and there was no warning that lethal force would be used. The officers were not disciplined or retrained for their use

of deadly force, and the CITY found that the shooting was
justified and did not violate any CITY policy.

c.  In *Murrietta-Golding v. City of Fresno, et al.*, No. 1:18-CV-0314-
AWI-SKO (E.D. Cal.), an FPD Officer shot an unarmed 16-year-
old boy in the back of the head, killing him instantly. In 2021, the
CITY settled the case for $4,900,000. The officer was not
disciplined or retrained for their use of deadly force, and the
CITY found that the shooting was justified and did not violate
any city policy.

d.  In *Reyes ex rel. Reyes v. City of Fresno, et al.*, No. 1:13-cv-
00418-DAD-SKO (E.D. Cal.), FPD officers shot and killed an
unarmed 28-year-old man who was suffering a mental health
disturbance. The man was shot four times, including three shots
while he was on the ground. The CITY settled the lawsuit for
$2,200,000 in 2016. The Officers were not disciplined or
retrained for their use of deadly force, and the CITY found that
the shooting was justified and did not violate any CITY policy.

e.  In *Enriquez v. City of Fresno, et al.*, No. 1:10-cv-00581-AWI-
BAM (E.D. Cal.), an FPD Officer killed an unarmed civilian,
shooting him eight times. In 2012, the CITY settled the lawsuit
for $1,300,000. The Officer was not disciplined or retrained for
his use of deadly force, and the CITY found that the shooting was
justified and did not violate any CITY policy. Plaintiffs in that
cased showed the federal jury a pattern of Fresno police shootings
from 2005 to 2010 that they contended were unlawful and
unjustified. The jury ruled in their favor and found the city liable.

f.  On February 15, 2018, the ACLU of California issued a report
titled *Reducing Officer-Involved Shootings in Fresno, California*,

16

criticizing the FPD's customs, training, and policies. *See* https://www.aclunc.org/docs/ReducingOISFresno2017.11.29.pdf. The report details community concerns and provides recommendations to reduce the number of officer-involved shootings and promote a positive police-community relationship in the CITY. The report finds that between 2001 and 2016, there were 146 officer-involved shootings by the Fresno Police Department. And the report also finds that at least 55 Fresno police officers were involved in more than one shooting incident, indicating that the CITY is failing to retrain officers or change their assignment to prevent more casualties.

74.     The aforementioned cases establish a pattern of excessive use of force by CITY police officers, and the unconstitutional custom, and practice of the CITY in ratifying the excessive use of force by FPD officers, as evidenced by the number of prior cases involving the use of deadly force by officers working for the FPD.

75.     The CITY's longstanding practice or custom caused the deprivation of Mr. Sosa and Plaintiffs' rights by DEFENDANT OFFICERS; that is, the CITY's official policy condoning excessive force against mentally ill people is so closely related to the deprivation of Mr. Sosa and Plaintiffs' rights in this case as to be the moving force that caused Mr. Sosa's death.

76.     The CITY had either actual or constructive knowledge of the unconstitutional policies, practices and customs alleged in the paragraphs above.

77.     The CITY also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Sosa, Plaintiffs, and other individuals similarly situated.

78.     By reason of the aforementioned acts and omissions, the Plaintiffs have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of Mr. Sosa. The aforementioned acts and omissions also caused Mr. Sosa's pain and suffering, loss of enjoyment of life, and death.

79.     Accordingly, Defendant CITY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

80.     Plaintiffs bring their claim individually and as successors in interest to Mr. Sosa and seek wrongful death damages under this claim. Plaintiffs also seek attorney's fees under this claim pursuant to 42 U.S.C. § 1988(b).

## FIFTH CLAIM FOR RELIEF

### Municipal Liability: Failure to Train (42 U.S.C. § 1983)

(Plaintiffs against CITY)

81.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

82.     At all times herein mentioned, DEFENDANT OFFICERS, acted under color of law and the acts and omissions of the DEFENDANT OFFICERS deprived Mr. Sosa and Plaintiffs of their Constitutional rights under the United States Constitution. The training policies of Defendant CITY were not adequate to properly train FPD officers to handle the usual and recurring situations in their interactions with residents, including responding to calls involving mentally ill people, responding to calls and interacting with people who display symptoms of mental illness. The training policies of Defendant CITY were not adequate to properly train FPD officers with regard to the use of deadly force, the permissible use of deadly weapons,

COMPLAINT FOR DAMAGES

and protecting the rights of persons to medical care during in the course of detaining individuals.

83.     The unjustified and excessive use of deadly force against Mr. Sosa by DEFENDANT OFFICERS, was a result of the negligent training by Defendant CITY who failed to train FPD officers, such as DEFENDANT OFFICERS, as to proper police tactics, proper use of force, proper use of deadly force, and proper police tactics in the use of force with respect to mentally ill individuals. Defendant CITY was responsible for the training of FPD officers to ensure that the actions, procedures, and practices of DEFENDANT OFFICERS, complied with Peace Officer Standards and Training ("POST") training standards regarding proper police tactics, proper use of force, and proper use of deadly force.

84.     Defendant CITY negligently failed to train CITY police officers, such as DEFENDANT OFFICERS, to comply with POST training standards regarding proper police tactics, proper use of force, proper use of deadly force, and proper police tactics when dealing with individuals suffering from a mental health crisis. POST was established by the California Legislature in 1959 to set minimum training standards for California police officers. The training policies of Defendant CITY were not adequate to train its police officers to handle the usual and recurring situations with residents and pretrial detainees that DEFENDANT OFFICERS have contact with.

85.     The training policies of Defendant CITY were deficient in the following:

    a.   Defendant CITY failed to adequately train Fresno Police Department officers, such as DEFENDANT OFFICERS, in de-escalating interactions with residents or individuals experiencing a mental health crisis. Instead of de-escalation, DEFENDANT

OFFICERS escalated their interactions with Mr. Sosa, who was experiencing a mental health crisis.

b. Defendant CITY failed to properly train Fresno Police Department officers, like DEFENDANT OFFICERS, to manage their fear to prevent it from becoming unreasonable and not objectively justifiable. This lack of training led to the use of deadly force by DEFENDANT OFFICERS, causing the death of residents or individuals in a mental health crisis, such as Mr. Sosa.

c. Defendant CITY failed to properly train CITY police officers, such as DEFENDANT OFFICERS, in proper police tactics, such as situational awareness, to prevent the use of negligent tactics, which is what DEFENDANT OFFICERS did in this case. Because of this lack of proper training by Defendant CITY, DEFENDANT OFFICERS did not use proper police tactics in handling their contact and interaction with Mr. Sosa. and DEFENDANT OFFICERS used defective police tactics, including the lack of situational awareness. These training failures by Defendant CITY, and defective tactics by DEFENDANT OFFICERS, resulted in the death of Mr. Sosa.

d. Defendant CITY failed to properly train police officers, such as DEFENDANT OFFICERS, on the importance of effective communication between officers prior to using any type of force.

e. Because of the lack of proper training by CITY, DEFENDANT OFFICERS did not use effective communication prior to and during the use of force against Mr. Sosa. This ineffective communication by DEFENDANT OFFICERS, prior to and during

COMPLAINT FOR DAMAGES

the incident, resulted in the death of Mr. Sosa, causing constitutional injuries to Mr. Sosa and PLAINTIFFS.

86.    The failure of Defendant CITY to provide proper training to its police officers resulted in the deprivation of Plaintiffs' rights by DEFENDANT OFFICERS. Defendant CITY's failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injuries to Plaintiffs.

87.    The training policies of the City were not adequate to train its police officers to handle the usual and recurring situations they must deal with, including situations involving persons suffering from a mental health crisis, such as Mr. Sosa. Defendant CITY was deliberately indifferent to the obvious consequences of its failure to properly train its police officers.

88.    The failure of the CITY to provide adequate training to its police officers caused the deprivation of Plaintiffs' rights by DEFENDANT OFFICERS; the CITY's failure to train is so closely related to the deprivation of Mr. Sosa and Plaintiffs' rights as to be the moving force that caused the ultimate constitutional injuries to Plaintiffs.

89.    By reason of the aforementioned acts and omissions of Defendant CITY, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of Mr. Sosa. The aforementioned acts and omissions also caused Mr. Sosa's pain and suffering, loss of enjoyment of life, and death.

90.    Defendant CITY is liable to the Plaintiffs for compensatory damages under 42 U.S.C. § 1983. Plaintiffs bring these claims as Mr. Sosa's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seek survival damages for the violation of Mr. Sosa's rights. Plaintiffs also seek reasonable attorneys' fees pursuant to 28 U.S.C. § 1988, costs, and interest.

1

2

3

**SIXTH CLAIM FOR RELIEF**

**Municipal Liability: Ratification (42 U.S.C. § 1983)**

(Plaintiffs against CITY)

4   91.   Plaintiffs repeat and reallege each and every allegation in the

5   foregoing paragraphs of this Complaint with the same force and effect as if

6   fully set forth herein.

7   92.   At all relevant times DEFENDANT OFFICERS acted under the

8   color of state law and within the course and scope of their employment with

9   Defendant CITY.

10   93.   The acts of DEFENDANT OFFICERS deprived Mr. Sosa and

11   Plaintiffs of their particular rights under the United States Constitution,

12   including when they intentionally tased and shot Mr. Sosa without

13   justification, causing his death, depriving Plaintiffs of their familial

14   relationship with Mr. Sosa.

15   94.   Upon information and belief, a final policymaker, acting under

16   color of law, has a history of ratifying the unconstitutional and unreasonable

17   uses of force, including deadly force.

18   95.   Upon information and belief, a final policymaker for the

19   Defendant CITY, acting under color of law, who had final policymaking

20   authority concerning the acts of DEFENDANT OFFICERS and the bases for

21   them, ratified the acts and omissions of DEFENDANT OFFICERS and the

22   bases for them. Upon information and belief, the final policymaker knew of

23   and specifically approved of Defendants' acts, specifically approving the FPD

24   Officers' excessive and unreasonable shooting of Mr. Sosa when he was not

25   an immediate threat of death or serious bodily injury.

26   96.   The official policies with respect to the incident are that FPD

27   Officers are not to use deadly force against an individual unless the

28   individual poses an immediate risk of death or serious bodily injury to the

Officers or others. The Defendant Officers' actions deviated from these official policies because Mr. Sosa did not pose an immediate threat of death or serious bodily injury to the involved Officers or anyone else.

97.     Upon information and belief, a final policymaker(s) has determined (or will determine) that the acts of DEFENDANT OFFICERS were "within policy."

98.     By reason of the aforementioned acts and omissions, Defendant CITY is liable to Plaintiffs for compensatory damages under 42 U.S.C. §1983.

99.     Plaintiffs bring this claim individually and as successors-in-interest to Mr. Sosa and seeks both survival and wrongful death damages. Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

## SEVENTH CLAIM FOR RELIEF

### Americans with Disabilities Act (42 U.S.C. § 12132)

(Plaintiffs against CITY)

100.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

101.    Mr. Sosa was a "qualified individual," with a mental impairment, specifically depressive disorder, that substantially limited his ability to care for himself and control his mental health condition as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131 (2).

102.    The City of Fresno is a covered entity for purposes of enforcement of the ADA, 42 U.S.C. §12131 (2), as explained by regulations under these laws.

103.    The CITY is mandated under the ADA not to discriminate against any qualified individual on the basis of disability in any services or facilities. 42 U.S.C. §12182 (a).

104.  Under the ADA, the CITY is mandated to develop effective procedures for interactions with individuals with mental disabilities and to ensure the protection of their personal and civil rights.

105.  DEFENDANT OFFICERS knew Mr. Sosa was experiencing a severe mental health crisis.

106.  DEFENDANT OFFICERS had numerous options to reasonably accommodate Mr. Sosa's condition, including but not limited to the following:

    a.  Deploying a Crisis Intervention Team (CIT) with officers specially trained in mental health crisis intervention;

    b.  Requesting the assistance of a mental health professional to accompany officers or provide immediate consultation;

    c.   Employing de-escalation techniques such as calm communication, active listening, and non-threatening body language;

    d.  Implementing time and distance strategies to create physical space and allow more time for the situation to de-escalate;

    e.  Following clear, empathetic communication protocols designed for interacting with individuals in crisis;

    f.  When safe and possible, involving family members or friends who could help calm Mr. Sosa;

    g.  Deploying a specialized mobile crisis team that includes both law enforcement and mental health professionals;

    h.  Utilizing trained negotiators to communicate with Mr. Sosa and work towards a peaceful resolution;

    i.  Creating a temporary safe environment to continue dialogue and assessment without immediate threat;

j. Refraining from brandishing firearms, which can escalate tensions and exacerbate the mental health crisis of an individual contemplating suicide by cop;

k. Implementing a tactical retreat by creating a physical barrier between themselves and Mr. Sosa, such as leaving the apartment and closing the door to establish a safer environment for verbal de-escalation.

107. The CITY and its agents violated the ADA by: failing to properly train its police officers to respond and interact peacefully with suicidal individuals, such as Mr. Sosa; failing to follow procedures for de-escalation and non-lethal force in interactions with Mr. Sosa, who was experiencing a mental health crisis; and failing to utilize any of the above reasonable accommodations.

108. As a result of the acts and omissions of the City and its agents, DEFENDANT OFFICERS, Mr. Sosa suffered damages, including loss of life and pain and suffering.

109. Plaintiffs bring this claim individually and as successors-in-interest to Mr. Sosa and seeks both survival and wrongful death damages. Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

## EIGHTH CLAIM FOR RELIEF

### Battery

(Plaintiffs against all Defendants)

110. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

111. DEFENDANT OFFICERS acted within the course and scope of their employment as officers for the Defendant CITY and FPD and acted under color of state law.

112.   DOE 3 intentionally tased Mr. Sosa. DOE 3 had no legal justification for using force against Mr. Sosa, making the use of force unreasonable under the circumstances.

113.   Defendant Officers intentionally shot Mr. Sosa, resulting in his fatal injuries. The officers had no legal justification for using deadly force against Mr. Sosa, making the use of force unreasonable under the circumstances.

114.   At all relevant times, Mr. Sosa did not pose an immediate threat of death or serious bodily injury to anyone, including Defendants Officers. No warning was given that deadly force would be used prior to its use, and less-than-lethal alternatives were available.

115.   Defendant CITY is vicariously liable for the wrongful acts of DEFENDANT OFFICERS pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for injuries proximately caused by an act or omission of an employee of the public entity.

116.   The conduct of DEFENDANT OFFICERS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Sosa, entitling Plaintiffs to an award of exemplary and punitive damages.

117.   Plaintiffs seek survival, wrongful death, and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

## NINTH CLAIM FOR RELIEF

### Negligence

### (Plaintiffs against all Defendants)

118.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

119.   DEFENDANT OFFICERS acted within the course and scope of their employment as officers for the Defendant CITY and FPD and acted under color of state law.

120.   Police officers, including DEFENDANT OFFICERS, have a duty to use reasonable care to prevent harm and injury to others. This duty includes using appropriate tactics, giving appropriate commands, using de-escalation techniques, and only using force as a last resort, especially when dealing with individuals in a mental health crisis. DEFENDANT OFFICERS also have a responsibility to provide timely medical care to individuals they have harmed.

121.   DEFENDANT OFFICERS negligently caused physical injury to Mr. Sosa when they, without any tactical plan, instructed Mr. Sosa to go outside towards two officers, and subsequently discharged their tasers and firearms at Mr. Sosa, killing him. Their use of force was excessive, unreasonable, and negligent, including their pre-shooting conduct and post-shooting neglect to provide medical care.

122.   DEFENDANT OFFICERS breached their duty of care. Their actions were negligent and reckless, including but not limited to: (a) instructing Mr. Sosa to go outside the home towards other officers without a tactical plan; (b) contributing to Mr. Sosa's disorientation by shouting conflicting command; (c) tasing Mr. Sosa without justification; (d) shooting Mr. Sosa without justification; and (e) failing to provide or summon timely medical care after the shooting.

123.   As a direct and proximate result of the conduct of DEFENDANT OFFICERS, Mr. Sosa suffered severe physical and mental pain, loss of life, and loss of earning capacity.

124.  At all relevant times, Mr. Sosa was not an immediate threat of death or serious bodily injury to anyone, and was not given any warning that deadly force would be used.

125.  Defendant CITY is vicariously liable for the wrongful acts of DEFENDANT OFFICERS pursuant to section 815.2(a) of the California Government Code.

126.  Plaintiffs bring this claim as successors-in-interest to Mr. Sosa and seek wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

## TENTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress

(Plaintiffs against all Defendants)

127.  Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

128.  DEFENDANT OFFICERS negligently caused physical injury and death to Mr. Sosa when they discharged their tasers and firearms at Mr. Sosa, striking him and eventually killing him. The use of deadly force by DEFENDANT OFFICERS was excessive, unreasonable and DEFENDANT OFFICERS were negligent in discharging their firearms at Mr. Sosa, including pre-shooting negligent conduct, actions, inactions, and tactics.

129.  MARIA SOSA was present at the scene, which is her residence, when DEFENDANT OFFICERS fatally discharged their tasers and firearms at Mr. Sosa and MARIA SOSA was aware that Mr. Sosa was being injured.

130.  As a result of being present at the scene and perceiving her husband, Mr. Sosa, being fatally shot by DEFENDANT OFFICERS, MARIA SOSA suffered serious emotional distress, including but not limited to

COMPLAINT FOR DAMAGES

suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

131.   On information and belief, an ordinary reasonable person would be unable to cope with hearing her husband fatally shot multiple times by the police, especially at their own residence.

132.   CITY is vicariously liable for the wrongful acts of DEFENDANT OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of their employment if the employee's act would subject him or her to liability.

133.   Plaintiff MARIA SOSA brings this claim individually and seeks compensatory damages under this claim as an individual.

## ELEVENTH CLAIM FOR RELIEF
### Violation of Cal. Civil Code § 52.1
#### (Plaintiffs against all Defendants)

134.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

135.   DEFENDANT OFFICERS acted within the course and scope of their employment as officers for the Defendant CITY and FPD and acted under color of state law.

136.   The Bane Act, the California Constitution, and California common law prohibit the use of excessive force by law enforcement. California Civil Code, Section 52.1(b) authorizes a private right of action and permits survival actions for such claims.

137.   On information and belief, DEFENDANT OFFICERS, while working for the CITY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against Mr.

Sosa, including by using excessive force against him without justification or excuse.

138.   When Defendants unnecessarily shot Mr. Sosa, they interfered with his civil rights to be free from unreasonable searches and seizures, due process, equal protection of the laws, medical care, and life, liberty, and property. They intentionally used deadly force, demonstrating a reckless disregard for Mr. Sosa's right to be free from excessive force.

139.   On information and belief, DEFENDANT OFFICERS intentionally and spitefully committed the above acts to discourage Mr. Sosa from exercising his civil rights.

140.   On information and belief, Mr. Sosa reasonably believed that the violent acts committed by Defendants were intended to discourage him from exercising his civil rights.

141.   Defendants successfully interfered with the civil rights of Mr. Sosa and Plaintiffs.

142.   Mr. Sosa was caused to suffer severe pain and suffering, loss of enjoyment of life, and loss of life. The conduct of Defendants was a substantial factor in causing the harm, losses, injuries, and damages of Mr. Sosa.

143.   Defendant CITY is vicariously liable for the wrongful acts of DEFENDANT OFFICERS under California law and the doctrine of *respondeat superior* and section 815.2(a) of the California Government Code.

144.   The conduct of the individual DEFENDANT OFFICERS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and Mr. Sosa. Plaintiffs and Mr. Sosa are thus entitled to an award of exemplary and punitive damages.

145.   Plaintiffs also seek survival damages, costs, and attorneys' fees under this claim.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs MARIA SOSA, L.S, and M.S request entry of judgment in their favor against Defendants CITY OF FRESNO; and DEFENDANT OFFICERS as follows:

1.    For compensatory damages according to proof at trial, including: survival damages, not limited to pre-death pain and suffering and loss life under federal and state law; and wrongful death damages under federal and state law;

2.    For funeral and burial expenses, and loss of financial support;

3.    For loss of consortium;

4.    For punitive and exemplary damages against DEFENDANT OFFICERS in an amount to be proven at trial;

5.    For statutory damages;

6.    For reasonable attorneys' fees including litigation expenses;

7.    For costs of suit and interest incurred; and

8.    For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: August 30, 2024          **LAW OFFICES OF DALE K. GALIPO**

/s/    *Dale K. Galipo*
**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo
Cooper Alison-Mayne

**STEVEN A. LERMAN & ASSOCIATES, INC.**
Steven A. Lerman
Nicholas M. Lerman

*Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES

1

## **DEMAND FOR JURY TRIAL**

2
    Plaintiffs hereby submit this demand that this action be tried in front of a jury.

3

4

5
DATED: August 30, 2024     /s/   *Dale K. Galipo*

**LAW OFFICES OF DALE K. GALIPO**
6
Dale K. Galipo

7
Cooper Alison-Mayne

8
**STEVEN A. LERMAN & ASSOCIATES, INC.**
9
Steven A. Lerman

10
Nicholas M. Lerman

11
*Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES